Vinton Frost
516 O'Farrell Street
San Francisco, CA 94102
(415) 608-1029

May 3, 2018
ORIGINAL

**UNITED STATES DISTRICT COURT**

**for the**

**NORTHERN DISTRICT OF CALIFORNIA**

*SAN FRANCISCO DIVISION*

RECEIVED

MAY – 3 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**Frost**

**v.**

**Palo Alto Police Officers: Unidentified Captain,
Sergeant Bechetti, and Officer Miceli
(in personal capacities)**

**Case Number:  16-CV-05883 RS**

**SECOND AMENDED COMPLAINT**

---

## I.   Parties to the Complaint

Plaintiff       Vinton Frost
                516 O'Farrell Street, #611
                San Francisco, California 94102
                (415) 608-1029
                vintonfrost@protonmail.com

Defendants      Unidentified Captain, Night Watch Commander
                Palo Alto Police Department
                275 Forest Avenue
                Palo Alto, CA 94301-2513
                (650) 321-4433

                Sergeant Bechetti
                Palo Alto Police Department
                275 Forest Avenue
                Palo Alto, CA 94301-2513
                (650) 321-4433

                Officer Miceli
                Palo Alto Police Department
                275 Forest Avenue
                Palo Alto, CA 94301-2513
                (650) 321-4433

## II. Basis for Jurisdiction

The basis for jurisdiction is a federal question with 42 USCA 1983 and the 4th and 14th Amendments of the United States Constitution at stake.

## III. Statement of Claim

History of Proceedings

- On 10/10/16, Plaintiff filed a complaint under Title 42 Section 1983, within the two-year statute of limitations period after the abuses of Plaintiff's constitutional rights occurred on 10/10/14 and 10/11/14. The claim named Sergeant Bechetti and Officer Miceli among other defendants.
- From March 10, 2017, to May 1, 2018, Plaintiff's Pro Se Counsel in San Jose refused service based on conflict of interest.
- On April 3, 2017, Plaintiff submitted a First Amended Complaint naming the Palo Alto Police Department and City of Palo Alto among other defendants.
- On May 15, 2017, court dismissed Plaintiff's First Amended Complaint with prejudice and without leave to amend.
- On February 27, 2018, the Ninth Circuit ordered to vacate the magistrate judge's judgment and remand for further proceedings.
- Today, Plaintiff files a Second Amended Complaint naming Sergeant Bechetti and Officer Miceli and adding their unidentified superior, the Police Captain commanding the night watch on October 10 and 11, 2014.

Narrative of Events

Two men, Rob Chandra and a secret individual who had been introduced to Plaintiff years earlier by Plaintiff's Stanford classmate Fred Wang (the latter man referred to herein as USSOR (for United States Special Operations officer in the Air Force, Retired or Reserve), with the two herein collectively referred to as HBSA, for Harvard Business School Alumni), called out to Plaintiff while he was walking along the path at Stanford Stadium toward the Palo Alto Caltrain station after the Stanford football game on Friday night, October 10, 2014. USSOR claimed to know Plaintiff, invited him for a beer at the post-game Stanford Buck and Cardinal Club tailgater, and left him in discussions with Chandra to go to the tailgater table and return to give Plaintiff a beer.

After a friendly discussion about Stanford and start-ups, USSOR, a venture capitalist, invited Plaintiff to join him and Chandra, another venture capitalist, at the Westin Hotel Bar, expressing further interest in Plaintiff's start-up and offering Plaintiff drinks on them. Plaintiff walked. HSBA drove. Plaintiff met them as they were seated at a table in the lobby bar. USSOR asked Plaintiff to leave "his things" at the table (the "things" included a jacket and a large manilla envelop containing oversized MRI images and a MRI report as well as State Disability and Insurance Records and some personal financial records)(Plaintiff had been at Stanford Hospital before the game). With the MRIs being important, Plaintiff placed them in a position where no

one could easily take them and where no one could take them without both HSBA seeing any theft.

USSOR said their bar tab was open and told Plaintiff to walk to the bar for the beer. After Plaintiff returned to the table, the MRI images, the MRI report and state disability and insurance records were gone, only the large envelope and bills remained. Plaintiff said that this was not funny, asked them where they had put his records and if this were a joke. HBSA they feigned ignorance and incredulity. Plaintiff alerted hotel staff and asked them to check security camera footage, asked by-standers if they saw anything, and called 911 to report the theft, asking for police to come to the hotel.

When Police arrived, Sergeant Bechetti asked HSBA and Plaintiff outside to discuss Plaintiff's theft complaint including that HSBA, given the physical properties of situation, had to have been involved in the theft. Plaintiff asked Sergeant Bechetti to check the hotel security video. The Sergeant went into the hotel. When he returned, he did not answer Plaintiff's question about the hotel video and instead questioned the three involved, HBSA and Plaintiff. The Sergeant would not allow Plaintiff into the hotel so that he could point out where the records where left and where HSBA had been seated. Instead, the Sergeant asked each individual: Why was each person at the bar, where did each person work, where did each person live, what was each person's marital status?

HSBA both responded they lived in or near Palo Alto, they worked in venture capital in either Palo Alto or Menlo Park, and they were married. Plaintiff responded he lived in San Francisco, which caused a slight smile on the Sergeant's face. Plaintiff said that he was unemployed in the sense of income but was working on a start-up, that he had been employed at the City of San Francisco Department of Recreation and Parks, but had herniated a disk and now was on worker's compensation medical care and receiving California State disability benefits. Again when asked, Plaintiff said he lived in San Francisco on the address on his license, at Jones and O'Farrell Streets.

Sergeant Bechetti continued the questioning with a rather amused look on his face. The Sergeant seems likely to have been wondering, why are two guys living in or near Palo Alto registered as guests of the hotel or the adjacent hotel Sheraton? Why are they meeting in a bar with a middle-age plus-one single guy from San Francisco who appears completely wasted? San Francisco police officers, who try to assist Plaintiff, have indicated to him that documented evidence exists in internal Palo Alto police reports that the Sergeant had thought that this episode had been some kind of sexual encounter gone *a rye*.

Plaintiff repeated his claim that given the circumstances of where he left the envelope, beneath the table, leaning against a low wall, that no one could have taken the contents without the knowledge of HSBA. Plaintiff asked the Sergeant about the video, and he was told that they didn't need to see the video and that the video was not important.

Bechetti stepped away, used his cellphone, and had a conversation with his superior, the night watch commander at the Palo Alto Police Department.    During this break, Plaintiff took two photos of each HBSA individual, Chandra and USSOR.

Then he returned, the Sergeant asked the three involved, HBSA and Plaintiff, to go our separate ways and for Plaintiff to leave the property.  Plaintiff agreed.  Before going, more than twice, Sergeant Bechetti asked Plaintiff he did he indeed have a place to go, he was highly skeptical.  Did Plaintiff really have a place to go?  Plaintiff said, "Yes," he had a home in San Francisco and that was where he was going.  The Sergeant did not seem to buy this.  [A police search of records would have indicated incorrectly that Plaintiff was homeless, despite living in a studio in a residential hotel in the center of San Francisco.  Since the hotel is administered by a non-profit for formerly homeless individuals, residents in such hotels are classified homeless in order for the City and Country of San Francisco to receive federal subsides.]

At some point in the conversation, Bechetti had remarked that Plaintiff hands were dirty.   In fact, they were.  Plaintiff had tripped on an oak tree root and had to use his hands to brace himself on the ground on the walk through the parking field around the Stadium, which had caused Plaintiff to ask himself if he were drunk.  Plaintiff was so inebriated, intoxicated from a drug that USSOR had placed in the beer that Plaintiff had given him, that Plaintiff did not even wash his hands when he got to the Hotel.

As Plaintiff walked past the Sheraton Hotel on the El Camino Real sidewalk around 10:45pm, after the last Caltrain back to San Francisco, Plaintiff was looking down at this cellphone, checking the SAMTRANS bus schedule; he was brutally attacked from behind with one very heavy blow to the left top of his head and his cellphone with the images of HSBA was seized out of his left hand.    After stumbling on for about 10 yards, Plaintiff lost consciousness and woke up more than four hours later.  He looked for someone to help.  No one was around.  Not one car drove by on El Camino Real.  He figured the best place to call for help was back at the hotel.

Plaintiff went to the front desk, told the two receptionists he had been attacked and that he needed the phone to call police for assistance.  He told the 911 operator that he had been attacked and that he needed assistance.  He gave the phone back to the receptionist, said thank you, and tried to stay awake on the bench in the lobby, but succumbed to his injury and lost consciousness again.  He had said nothing further to the receptionists.

Officer Miceli and Officer Melgar and other officers arrived (no medical personnel arrived), they woke up Plaintiff, and immediately walked him outside.  Miceli went back into the hotel without saying a word.    Plaintiff began telling Officer Melgar repeatedly "they" had stolen his phone and beaten him up.    With the only real animus police officers displayed that evening, Officer Melgar shouted back at him, in a demonstration that she did not buy it and did not want to continue hearing about it, yelling "no, they didn't [steal your phone], you just lost it!"

Miceli came back and addressed Plaintiff without speaking to Officer Melgar, and Officer Melgar did not speak up to report the content of the Plaintiff's repeated claims of a beatdown and phone theft.

Officer Miceli got close to Plaintiff and asked Plaintiff if Police had asked him to leave the hotel and if he had come back.   Plaintiff responded, "Yes" and Plaintiff was arrested and taken to County Jail and then transported to a residential jail where he remained incarcerated for six days.

Legal Basis

Plaintiff claims abuse by Defendants under color of state law of his rights guaranteed by 4th Amendment of the Constitution prohibiting illegal seizure, in this case the illegal seizure of Plaintiff's person.   Defendants unlawfully arrested Plaintiff; Defendants subjected Plaintiff to unlawful detainment.

In addition, Plaintiff claims abuse by Defendants under color of state law of his rights guaranteed by the equal protection clause of the 14th amendment of the US Constitution which occurred due to a "cocktail of discrimination" of Plaintiff, causing the Police Captain and Sergeant Bechetti and the officers under their command to act with deliberate indifference, not making sufficient effort to investigate Plaintiff's claims 1) that his property had been stolen, first the medical and insurance records, and then his phone, and, 2) that he had been beaten.  The Sergeant did not ask and would not listen to any of the details of the location and actions describing the thefts and beating.  The Sergeant did not give Plaintiff a police incident report, he did not acknowledge Plaintiff's 911 call claiming theft of his property, and he ignored Plaintiff's repeated claims at the hotel.

When Plaintiff returned to the hotel, after the beating and phone theft and losing consciousness, to use the hotel phone to call 911, and when Officer Miceli responded and came to the hotel, upon instruction from his superiors Sergeant Bechetti and the unidentified Captain, Officer Miceli clearly had already intended to arrest Plaintiff for trespass without satisfying any test of reasonableness of such arrest.  He paid no attention to Plaintiff's 911 call and statements Plaintiff made on site that he had been attacked and his phone stolen.  Lastly, instead of releasing Plaintiff from Santa Clara Country central processing jail on the following morning with a citation, upon instructions from Defendants the Santa Clara County Sherriff transported Plaintiff to County Jail.

To cover-up the truth of events after the fact, Officer Miceli, with the participation of Sergeant Bechetti and the Unidentified Police Captain, submitted a fraudulent police report to Superior Court, which was untrue, inaccurate, and incomplete.  It made no mention of theft of Plaintiff's property nor the battery on Plaintiff.  It referenced no 911 calls.  It was inaccurate on time of events.   The report falsely attributed to the reporting witness events that did not occur as reported, etc.

Second Amended Complaint

## IV. *Relief*

Plaintiff seeks equitable relief for his injuries of unlawful arrest, unlawful detainment, unequal protection under the law, and from a falsified police report, in the amount of $1,000,000.   If Plaintiff engages an attorney, he asks for an additional money award equal to reasonable attorney fees.

## V. Certification and Closing

Under Federal Rules of Civil Procedure 11, by signing below, Plaintiff certifies to the best of his knowledge, information, and belief that this complaint:  (1) is not being presented for improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying or reversing existing law; (3) the factual contentions have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the rules of FRCP 11.

Plaintiff thanks the court.

Vinton Frost
San Francisco
May 3, 2018